**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

BANK OF THE OZARKS,

        Case No.: 1:18-cv-11870-TLL-PTM

    Plaintiff,

        Hon. Thomas L. Ludington
        Magistrate Judge Patricia T. Morris

v.

PERFECT HEALTH SKIN
AND BODY CENTER PLLC, and
THEODORE BASH, an individual,

    Defendants.
_____/

## ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

On June 12, 2018, Plaintiff Bank of the Ozarks (Bank OZK) filed a complaint against Defendants Perfect Health Skin and Body Center, PLLC (Perfect Health), and one of its alleged members, Dr. Theodore Bash. ECF No. 1. The complaint alleges that Perfect Health is in default of its obligations under an Equipment Financing Agreement between Bank of the Ozarks and Perfect Health, and that $139,822.38 remains due and owing under the Equipment Financing Agreement. The complaint asserts six counts for relief, including a breach of Dr. Bash's guaranty of Perfect Health's obligation under the Equipment Financing Agreement (Count I); breach of the Equipment Financing Agreement by Perfect Health (Count II); breaches of contracts implied in law, implied in fact, and promissory estoppel against both Defendants (Counts III, IV, and V); and one count for claim and delivery of collateral subject to the Bank OZK's security interest (Count VI).

On June 20, 2018, Bank OZK filed an ex parte motion for possession pending final judgment. ECF No. 6. The motion asserted that Bank OZK has a security interest in, among

other things, certain equipment: 5 QANS Assessment Systems (5-QANS), and an "Aspen Laser System" (Laser). The Equipment Financing Agreement was attached to the motion, as well as the UCC financing statement, reflecting Bank OZK's security interest in the equipment. ECF No. 6-2, 6-3. The motion asserted that the collateral is in imminent danger and sought possession of the collateral pending final judgment. The motion also requested an ex parte restraining order pending a hearing on the motion for possession pending final judgment. On June 21, 2018, the Court entered an order denying Bank OZK's request for an ex parte restraining order, and scheduling the motion for possession pending judgment for hearing. ECF No. 7. The Court explained that Bank OZK did not make the requisite showing required by MCR 3.105 (E)(1)(b) for an ex parte restraining order. A hearing on the motion for possession pending judgment was held on July 11, 2018. The motion was granted. ECF No. 20.

Defense counsel filed a motion to withdraw, which was granted. Attorney James Meyer was substituted as counsel for Dr. Bash. Attorney Veronica Turner later filed an appearance on behalf of Dr. Bash as well. Defendant Perfect Health was directed to secure new counsel but has not done so. On November 19, 2018, Bank OZK moved for partial summary judgment against Dr. Bash on Counts I and III of its amended complaint. ECF No. 39. Dr. Bash responded, and Bank OZK replied. ECF Nos. 43, 45.

I.

Perfect Health Skin and Body PLLC (Perfect Health) did business as O Bella Aesthetics, a medical spa in Okemos, MI. According to corporate formation documents dated November 30, 2012, Richard MacAuley was the registered agent and sole member of Perfect Health Skin and Body Center PLLC. *See* Resp. Ex. B, Corp. Filings, ECF No. 43-3. He was also listed as the

owner of Perfect Health. *Id.* Subsequent filings listed MacAuley as the registered agent, but did not list members of the LLC. *Id.*

A resolution dated June 17, 2015 provides that "Perfect Health Skin and Body Center, PLLC is owned 100% by Ted Bash. Richard MacAuley has no ownership interest in the company. Richard MacAuley shall be removed from company bank account(s) effective as of June 1, 2015. Richard MacAuley shall remain as clinic medical director until further notice." Mot. Ex. 1, Corp. Res., ECF No. 39-1 at PGID 331. Dr. Bash denies any knowledge of this corporate resolution, denies signing the resolution, and also denies that he has ever been a member, owner, managing partner, managing director, employee, agent or representative of Perfect Health. Resp. Ex. A, Bash Aff. ¶ 6. No documents have been produced identifying Dr. Bash as an agent or member of Perfect Health.

In July of 2016, an equipment financing agreement was entered into between Bank OZK and Perfect Health. *Id.* PGID 333. Dr. Bash's name is signed thereto. *Id.* PGID 337. He claims that this signature was forged by someone with no authority to act on behalf of Perfect Health. Answer ¶ 63.

Pursuant to the Equipment Finance Agreement, Perfect Health was obligated to repay the loan to Bank OZK in 63 monthly installments of $2,922.47 plus three additional payments of $99. Agt., PGID 333. Bank OZK was granted a security interest in the equipment and assets of Perfect Health. *Id.* PGID 334. In the event of default, Bank OZK was entitled to accelerate the amounts due. *Id.* PGID 335.

Bank OZK has also produced a Guaranty which bears the signature of Dr. Bash and which guarantees payment of Perfect Health's obligations under the Equipment Financing Agreement. ECF No. 39-1 at PGID 339. Dr. Bash contends that his signature on the guaranty

was forged as well. Answer ¶ 15. Bank OZK also produced a Certificate of Acceptance, which Dr. Bash allegedly signed on July 12, 2016 reflecting that Perfect Health had received delivery of the equipment subject to the financing agreement and inspected it. ECF No. 39-1 at PGID 341. Dr. Bash contends that this signature is a forgery as well. Bash Aff. ¶ 15.

Perfect Health made 15 monthly payments to Bank OZK between July 2016 and October 2017. Martindale Decl. ¶ 5, ECF No. 39-1. Beginning in July 2017, two alleged representatives of Perfect Health identified as Andy Park and Pam Lynch contacted Bank OZK and requested to enter into a deferral agreement due to a slowdown in business. *Id.* ¶ 8. On November 22, 2017, Bank OZK, Perfect Health, and Dr. Bash entered into a Deferral Agreement, whereby certain payments due under the Equipment Financing Agreement were deferred until the end of the loan term. Mot. Ex. 6, ECF No. 39-1 at PGID 354. Dr. Bash's signature appears on the document on behalf of debtor Perfect Health and on behalf of himself in his capacity as guarantor. Dr. Bash does not dispute that he signed the deferral agreement, nor does he contend his signature was a forgery. Answer ¶ 24. He does assert, however, that he initially "signed only as to Guarantor." Bash Aff. ¶ 22. After Bank OZK rejected the Deferral Agreement due to lack of Perfect Health's signature, Dr. Bash then signed it on behalf of the debtor, Perfect Health, but left the "title" field blank as he contends he has no relationship with Perfect Health. *Id.* ¶ 24.

Bank OZK seeks summary judgment solely against Dr. Bash on Count I (Breach of Guarantee) and Count III (Breach of Deferral Agreement) of its amended complaint.

## II.

### A.

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). "The party opposing summary judgment cannot rest on its pleading or allegations, to prevail, they must present material evidence in support of their allegations." *Leonard v. Robinson*, 477 F.3d 347 (6th Cir. 2007) (citing *Celotex Corp v. Catrett*, 477 U.S. 317 (1986)). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

Where the moving party also bears the ultimate burden of persuasion, the movant's affidavits and other evidence not only must show the absence of a material fact issue, they must also carry that burden. *Vance v. Latimer*, 648 F.Supp.2d 914, 919 (E.D. Mich. 2009).

**B.**

To recover for breach of contract under Michigan law, "a plaintiff must prove (1) that a contract existed between the parties, (2) the terms of the contract, (3) that [the defendant] breached the contract, and (4) that the breach caused his injury." *Platsis v. E .F. Hutton & Co*, 642 F. Supp. 1277; 1309 (W.D. Mich. 1986).

The elements of a valid contract under Michigan law are: 1) parties competent to contract; 2) proper subject matter; 3) consideration; 4) mutual agreement; 5) mutual obligation. *Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. App. 1990).

**III**.

Bank OZK's motion for summary judgment posits a simple theory: 1) Dr. Bash signed the Deferral Agreement; 2) the Deferral Agreement incorporates the Guarantee and the Equipment Financing Agreement by reference and reaffirms the parties' obligations thereunder; 3) Dr. Bash breached those obligations; 4) Dr. Bash is liable. Indeed, the Deferral Agreement provides, in relevant part, as follows:

> WHEREAS, the Secured Party and the Debtor are parties to that certain Equipment Finance agreement (the "Finance Agreement") dated effective as of July 28, 2018 . . .
> WHEREAS, Theodore Bash the Guarantors personally guaranteed the debts, liabilities, and obligations of the Debtor to the Secured Party under the Financing Agreement . . .
> <u>Reaffirmation of Obligations</u>: The Debtor and the Guarantor hereby reaffirm their respective obligations to the Secured Party under the Finance Agreement, as modified hereby, and the Guarantor's guarantee thereof. The Debtor and the Guarantor hereby confirm that their respective obligations to the Secured Party are not subject to any disputes, defenses, or adjustments of any kind whatsoever . . .

ECF No. 39-1 at PGID 355.

Dr. Bash's response tells a fascinating tale of identity theft, fraud, predatory lending, and improper contact with represented parties. Dr. Bash does not, however, explain how any of those alleged facts impact the validity of the Deferral Agreement or his obligations thereunder. As to Dr. Bash's defenses to liability, he presents two arguments.

With respect to Count III (breach of Deferral agreement), Dr. Bash argues that he was not authorized to sign on behalf of Perfect Health because he was not a member, owner, managing partner, managing director, employee, agent, or representative of Perfect Health. Thus, he contends that his signature on behalf of debtor Perfect Health was invalid. He concludes, therefore, that the entire Deferral Agreement is invalid. He offers no support for this inferential suggestion. Bank OZK has moved for summary judgment *against Dr. Bash*, not Perfect Health.

Irrespective of whether Dr. Bash's signature on behalf of Perfect Health was effective to bind Perfect Health, it is undisputed that he also signed on behalf of himself in his capacity as Guarantor. Dr. Bash certainly had the authority to bind himself. Summary judgment will be granted with respect to Count III.

With respect to Count I (Breach of Guaranty), Dr. Bash argues that his signature on the Guarantee was forged. The argument, however, is entirely non-responsive to the fact that the Deferral agreement (which he did sign) 1) incorporates the Guaranty and the Equipment Financing Agreement by reference; 2) reaffirms his obligations thereunder; and 3) expressly confirms that his obligations to the Secured Party "*are not subject to any disputes, defenses, or adjustments of any kind whatsoever*." *Id.* (emphasis added).

It is undisputed that Dr. Bash signed the Deferral Agreement in his personal capacity as guarantor. It is also undisputed that he is in breach of that guarantee, as no payment has been made to Bank OZK since January 22, 2018. *See* Answer ¶ 31. According to the declaration of Bank OZK's employee, $139,822.38 remains outstanding in principal and accrued interest through June 18, 2018, plus an additional $3,463.94 through November 16, 2018. Dr. Bash does not dispute those figures. Summary judgment will therefore be granted on Count I.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's motion for summary judgment (ECF N. 39) against Dr. Theodore Bash as to Counts I and III of the first amended complaint (ECF No. 22) is **GRANTED**.[1]

Dated: January 24, 2019

        s/Thomas L. Ludington
        THOMAS L. LUDINGTON
        United States District Judge

---

[1] The financing agreement also provides that Bank OZK is entitled to costs of collection and attorney fees (Mot. Ex. 1, p. 3, § 11), which Bank OZK says they will request "in the manner directed by the Court." The Court will provide no direction other than to refer Bank OZK to the Federal and Local Rules.