# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

BANK OF THE OZARKS,

          Plaintiff,

v.

PERFECT HEALTH SKIN
AND BODY CENTER PLLC, and
THEODORE BASH, an individual,

          Defendants.
_____/

Case No.: 1:18-cv-11870-TLL-PTM

Hon. Thomas L. Ludington
Magistrate Judge Patricia T. Morris

## ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEY FEES IN PART, GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT IN PART, DENYING PLAINTIFF'S MOTION TO STRIKE AND DENYING DEFENDANT BASH'S REQUEST TO STRIKE

Plaintiff's amended complaint (ECF No. 22) contains the following counts: Count I (Breach of Guaranty against Dr. Bash only); Count II (Breach of Equipment Finance Agreement against Perfect Health only); Count III (Breach of Deferral Agreement); Count IV (Breach of Contract Implied in Law); Count IV[1] (Breach of Contract Implied in Fact); Count V (Promissory Estoppel); Count VI (Fraud/Misrepresentation); Count VII (Statutory Conversion); Count VIII (Common Law Conversion); Violation of RICO (Count IX); and Count X (Claim & Delivery against Perfect Health only).

On January 24, 2019, the Court granted Plaintiff's motion for partial summary judgment against Dr. Bash as to Count I (Breach of Guaranty) and Count III (Breach of Deferral Agreement). ECF No. 46. On May 24, 2019, the Court granted Defendant Bash's motion for summary judgment in part, and dismissed Count IV (Breach of Contract Implied in Law), Count

---
[1] The complaint has two counts labeled "Count IV."

IV (Breach of Contract Implied in Fact), and Count V (Promissory Estoppel). ECF No. 60. On June 24, 2019, the Court entered a stipulated order to dismiss Counts VI, VII, VIII, and IX without prejudice against Dr. Bash only. Thus, there are no claims pending against Dr. Bash. However, judgment has not yet been entered against Dr. Bash on Counts I and III of the amended complaint.

A default was entered against Perfect Health on March 5, 2019. ECF No. 54. Plaintiff now seeks a default judgment against Perfect Health. ECF No. 67. Also pending is Plaintiff's motion for attorney fees (ECF No. 65), and motions to strike (ECF Nos. 70, 72), which will be addressed in turn.

**I.**

Plaintiff moves for default judgment against Perfect Health, requesting the following relief:

> (1) enter a default judgment for breach of contract on Counts II and III of the Amended Complaint against Perfect Health in the amount of $318,532.50, plus interest as allowed by law and future costs of collection and attorney fees as Bank OZK may request on motion; (2) enter a default judgment for conversion pursuant to MCL 600.2919(a) on Count VII of the Amended Complaint against Perfect Health in the amount of $590,079.43, plus interest as allowed by law; (3) enter a default judgment for fraud on Count VI of the Amended Complaint against Perfect Health in the amount of $147,920.21, plus interest as allowed by law; and (4) enter a default judgment for RICO on Count IX of the Amended Complaint against Perfect Health in the amount of $614,372.29, plus interest as allowed by law. 5 Bank OZK also requests such other or additional relief as this Court deems appropriate under the circumstances.

ECF No. 67, PageID.1089.

**A.**

Before a default judgment may be entered, a party first must obtain a default. Fed. R. Civ. P. 55(a). "Once a default is entered, the defendants are considered to have admitted the *well pleaded allegations* in the complaint, including jurisdiction." *Ford Motor Company v. Cross*, 441

F.Supp.2d 837, 845 (E. D. Mich. 2006) (citing *Visioneering Construction v. U.S. Fidelity and Guaranty*, 661 F.2d 119, 124 (6th Cir. 1981)) (emphasis added).

Here, Plaintiff properly obtained a default against Defendant Perfect Health. Federal Rule of Civil Procedure 55(b)(2) provides that upon application of the party, the court may enter a default judgment. Rule 55(b)(2) further provides that a court "may conduct hearings . . . to determine the [applicable] amount of damages" or "establish the truth of any allegation by evidence." The rule further provides, in relevant part, "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." Fed. R. Civ. P. 55(b)(2).[2]

While the well-pleaded factual allegations in the complaint are taken as true when a defendant is in default, damages are not. *Ford Motor Company*, 441 F.Supp.2d at 848 (citing *Thomson v. Wooster*, 114 U.S. 104 (1885)). "Ordinarily, the District Court must hold an evidentiary proceeding in which the defendant has the opportunity to contest the amount [of damages]." *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995) (internal quotation and citation omitted). However, Rule 55 gives the court the discretion to determine whether an evidentiary hearing is necessary, or whether to rely on detailed affidavits or documentary evidence to determine damages. *Stephenson v. El Batrawi*, 524 F.3d 907, 916 (8th Cir. 2008); Federal Rules of Civil Procedure, Rules and Commentary Rule 55;

**B.**

Despite the number of claims advanced by the Plaintiff, the facts are not particularly complicated, at least from the Plaintiff's perspective. It entered into an Equipment Finance

---

[2] Bank OZK served Perfect Health with a copy of a Notice of Request for Default Judgment, together with these motion papers. *See* Exhibit 1.

Agreement requiring Perfect Health to make 63 partial monthly payments of $2,922.47 to Plaintiff Bank of the Ozarks. In return, Perfect Health granted Bank of the Ozarks a security interest in a Aspen Laser System with accessories and five QANS assessment systems with accessories. Ultimately, Bank of the Ozarks contends that Perfect Health defaulted for a number of reasons not the least of which was their failure to make payments. The key provisions of the Equipment Finance Agreement are as follows:

> 3. Terms and Payments: You [Perfect Health] promise to pay us the total of all the payments that are indicated above, which can be determined by multiplying the number of monthly payments times the monthly payment amount and the other payments, all as indicated above.
> . . .
> 4. Security Interest: To secure your obligations to us described in this Agreement, *you hereby grant us a security interest in the Equipment* and all accessions thereto, and replacements thereof, and all proceeds of all the foregoing.
> . . .
> 5. Equipment: *You represent and warrant that you are the sole owner of the Equipment* and hold good title therein free of any liens, encumbrances, or interests of any kind except for the security interest we hold pursuant to this Agreement. You agree not to sell, transfer or dispose of Equipment or any interest therein or to allow the Equipment to become subject to any liens, encumbrances, or security interests of an kind, except for our security interest, until all amounts payable by you under this Agreement have been paid in full.
> . . .
> 11. Default and Remedies: . . . [in the event of a default] *we may exercise any one or more of the following remedies: (i) accelerate, declare due, sue for and receive from you the sum of (x) all payments and other amounts then due and owing under this agreement* . . .
>
> ECF No. 75-2, PageID.1283–85 (emphasis added).

**i.**

As explained in the Court's earlier order granting summary judgment in part against Dr. Bash, Plaintiff has established that Perfect Health is in default of the Equipment Finance Agreement and Deferral Agreement and the unpaid indebtedness is accelerated and is due to be paid. ECF No. 46. Default Judgment is therefore appropriate. Plaintiff also sufficiently established damages in the amounts set forth in the Court's previous order, together with interest

which has continued to accrue, for a total principal and interest amount through June 6 of $147,920.21, plus continued interest at a rate of $22.94 per diem until the judgment is satisfied. ECF No. 67-2. Plaintiff's contractual collection costs and fees will be addressed below. Default Judgment will be entered on Counts II and III against Perfect Health in an amount of $147,920.21 in principal and continuing interest from June 6 until the judgment is satisfied.

**ii.**

Plaintiff also seeks default judgment on Counts VII (Statutory Conversion) and Count VIII (Common Law Conversion). MCL § 600.2919a(1) provides that "A person damaged as a result of either or both of the following may recover three times the amount of actual damages sustained, plus costs and reasonable attorney fees":

> (a) Another person's stealing . . . or converting property to the other person's own use.
> (b) Another person's . . . receiving, possessing, concealing, or aiding in the concealment of stolen . . . or converted property when the person . . . receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen . . . or converted. MCL § 600.2919a(1)(b).

"Common law conversion . . . consists of any distinct act of domain wrongfully exerted *over another's personal property* in denial of or inconsistent with the rights therein. Conversion may occur when a party properly in possession of property uses it in an improper way, for an improper purpose, or by delivering it without authorization to a third party." *Dep't of Agric. v. Appletree Mktg., L.L.C.*, 485 Mich. 1, 13–14 (2010) (internal quotations and citations omitted) (emphasis added).

Plaintiff contends it has stated a claim for conversion by alleging 1) that Andy Park, an alleged agent and employee of Perfect Health, absconded with the five QANS units, the equipment collateral subject to Plaintiff's security interest, and 2) that Dr. Bash, also an alleged

agent of Perfect Health, facilitated the alleged conversion by obtaining a deferral of the equipment loan under circumstances where he knew or should have known about the theft of the five QANS units, thereby depriving Plaintiff of its opportunity to attempt to repossess the five QANS units (their whereabouts are now unknown).

Perhaps Andy Park and/or Dr. Bash's alleged conduct constituted conversion *of Perfect Health's property*. However, Perfect Health cannot convert its own property. Perfect Health owned the collateral. *See* Equip. Fin. Agt. at 2, ECF No. 75-2, PageId.1284 ("You represent and warrant that you are the sole owner of the Equipment and hold good title thereto . . ."). Bank OZK did not own the collateral; rather it had a security interest in the collateral. *Id.* ("you hereby grant us a security interest in the Equipment . . ."). The debtor's act of interference with a secured party's rights in the collateral does not constitute conversion of property that the debtor owns. *Platte Valley Bank v. Tetra Fin. Grp., LLC*, 682 F.3d 1078 (8th Cir. 2012). It is, however, a breach of the security agreement entitling the secured party to the rights thereunder. *See id.*; *see also* Equip. Fin. Agt. at 3, ECF No. 75-2, PageId.1285 (setting forth the rights of the secured party in the event of a default, including acceleration of the outstanding debt and possession of the collateral). Plaintiff's motion for default judgment will be denied as to Counts VII and VIII because Plaintiff has not stated a claim for conversion.

### iii.

Plaintiff also seeks default judgment on Count VI (Fraud/Misrepresentation) and Count IX (RICO). Once an entry of default against a defendant has been made the court must treat the "*well-pleaded*" allegations as true. *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (emphasis added).

The traditional common-law claim of fraudulent misrepresentation requires the plaintiff to show that: "the defendant made a material representation; the representation was false; the defendant knew it was false when it was made or made it recklessly, without knowledge of its truth and as a positive assertion; the representation was made with the intention to induce reliance by the plaintiff; the plaintiff acted in reliance upon it; and the plaintiff suffered injury. *Hord v Environmental Research Inst*, 463 Mich 399, 404, 617 NW2d 543 (2000).

Here, Plaintiff's primary factual predicate for the fraud claim is that Perfect Health represented that it intended to pay on the loan but did not do so. Plaintiff also argues that obtaining a deferral under false pretenses (omitting the fact that the collateral was no longer in the debtor's possession) also constituted fraud. This a garden variety breach of contract claim. It is axiomatic that "misrepresentations relating to the performance of a contract do not give rise to an independent cause of action in tort." *Huron Tool & Engineering Co. v. Precision Consulting Servs., Inc.,* 209 Mich.App 365, 373;532 NW2d 541 (1995). "Fraud must be extraneous to the contract in order to cause harm distinct from that caused by the breach of contract." *I-Fusion Tech., Inc. v. TRW Auto. U.S., L.L.C.*, No. 306466, 2012 WL 6604701, at *2 (Mich. Ct. App. Dec. 18, 2012); *Id.* To state a tort claim, the plaintiff must allege a "violation of a legal duty separate and distinct from the contractual obligation." *Rinaldo's Constr Corp v. Mich. Bell Tel Co.*, 454 Mich. 65, 84 (1997). The motion will be denied as to Count VI.

"To state a § 1962(c) RICO claim… a plaintiff must plead a person's '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' *Hager v. ABX Air, Inc*., No. 2:07-CV-317, 2008 WL 819293, at *3 (S.D. Ohio Mar. 25, 2008), citing Sedima, *S.P.R.L. v. Imrex Co.*, Inc., 473 U.S. 479, 496 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Pursuant to Fed. R. Civ. P. Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the

circumstances constituting fraud or mistake." At a minimum a plaintiff must " 'allege the time, place, and content of the alleged misrepresentation on which [they] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.' " *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir.2003) (quoting *Coffey v. Foamex L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993)). *See Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 404 (6th Cir. 2012).

Here, Plaintiff has not alleged a sufficient factual predicate for the RICO claim. In its motion, Plaintiff identifies various entities (including Perfect Health, REM Nation, LLC, Welltech, LLC, and O'Bella Aesthetics, LLC) who entered into "several contracts" with various "third parties," including Bank OZK. These are unrelated contracts entered into between unknown third parties and various affiliates of Perfect Health who are not named as Defendants. Plaintiff does not explain how those circumstances are relevant to its RICO claim against Perfect Health.

Perfect Health's promise to pay on the loan, and failure to fulfill that promise, is not an act of racketeering activity; again, it is a garden variety breach of contract. Plaintiff also alleges that Perfect Health repeatedly (and falsely) expressed its intention to pay on the loan. These additional allegations do not transform the breach of the Equipment Finance Agreement into an act of racketeering activity.

Even assuming Perfect Health's act of obtaining a deferral under false pretenses constitutes a sufficient predicate act of wire fraud (which is far from clear), it is but one act, whereas RICO requires a pattern of racketeering activity. Plaintiff attempts to break this single act down into its constituent parts (Perfect Health called a Bank OZK representative on the

phone, asked for a deferral, omitted information, then signed the deferral). The argument is unpersuasive. The request for default judgment will be denied as to Count IX.

### III.

Plaintiff seeks contractual attorney fees and collection costs of $168,814.00 and $1,798.29, respectively, against Dr. Bash and Perfect Health, pursuant to the terms of the Equipment Finance agreement which provided for reasonable attorney fees and costs of collection in the event of a default. Summary judgment was entered against Dr. Bash on the Deferral Agreement, which reaffirmed his obligations under the Equipment Finance Agreement. ECF No. 46. Default Judgment will be entered against Perfect Health on the breach of contract claims as well, as set forth above. Accordingly, both Defendants are liable for reasonable attorney fees and costs of collection on the loan.

### A.

Contractual attorney fees are an element of damages for breach of contract. *First Merit Bank v. J&B Product, Ltd.*, 2016 WL 7385714 (E.D. Mich. Dec. 21, 2016). In diversity cases, federal common law governs the enforcement thereof. *JPMorgan Chase Bank v. Winget*, 2016 WL 146658 (E.D. Mich. 2016) ("the type and amount of documentation needed to support a request for attorney's fees' pursuant to a contract is procedural . . . and should be analyzed using Sixth Circuit law.") (internal quotations omitted).

The award of attorney's fees must be reasonable as determined under the 'lodestar' approach." *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). The lodestar approach involves multiplying the number of

hours reasonably spent by a reasonable hourly rate in the community for similar work. *Id.* The party requesting attorney's fees bears the burden of establishing that the number of hours and hourly rate are reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). The "essential goal is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

After determining the lodestar figure, "[t]he trial judge may then, within limits, adjust the 'lodestar' to reflect relevant considerations peculiar to the subject litigation. The factors which the district court may consider, either in determining the basic lodestar fee and/or adjustments thereto, include the twelve factors listed in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717–19 (5th Cir.1974)." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 349 (6th Cir. 2000) (citations omitted). Those twelve "Johnson" factors are: …(1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." *Id.* at n. 8.

**B.**

Defendant Bash opposes the fee request raising many of the same arguments raised throughout these proceedings including 1) his lack of an agency relationship with Perfect Health, 2) that his signatures on the Guaranty and Equipment Finance Agreement were forgeries, 3) and that the Equipment Finance Agreement is void. These arguments will not be revisited again. Suffice it to say, as explained previously, that Dr. Bash admitted that he signed the Deferral

Agreement. The Deferral Agreement reaffirmed his obligations under the Equipment Finance Agreement. The latter provided for collection costs and attorney fees.

As for the amount of fees, Defendant Bash raises additional arguments. Defendant Bash argues that the hourly rates for Plaintiff's counsel are too high, in that they are at or above the 95th percentile for attorneys in Detroit, whereas the 75th percentile for Bay County (the county in which this action was brought) would be more appropriate. Defendant Bash provides no legal authority for the proposition that a "reasonable hourly rate in the community for similar work" means the community where the action was brought, as opposed to the community in which the attorneys practice. Additionally, Defendant Bash misreads the data from the State Bar of Michigan. Plaintiff's counsel's rates of $350 and $360 are not at the 95th percentile for practitioners in Wayne County ($467). They are closer to the 75th Percentile ($317). ECF No. 65-5, PageID.1029.

Plaintiff's counsel contends that a rate above the 75th percentile is warranted given their extensive experience (20-plus years representing fortune 100 companies). The relative simplicity of this matter (an action to collect on a loan and enforce a security interest) cuts against this argument. Liability was predicated on essentially one fact: Dr. Bash signed the deferral agreement (a one-page document), which reaffirmed his obligation under the loan. The reasonable rate is to be calculated with reference to prevailing market rates for "similar work." *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1402 (6th Cir. 1995). An unremarkable $139,000 collection action does not warrant a rate that counsel would charge for representing a Fortune 100 company in complex commercial litigation, notwithstanding the perhaps overzealous defense.

The following information from the State Bar of Michigan's attorney fee data guides the Court's determination of the appropriate rate here: the median hourly rate for Business/Commercial litigators (across all counties and experience levels) is $304/hr; the median rate for attorneys with 26-30 years' experience (across all counties and practice areas) is $278/hr; the median rate for Wayne County attorneys (across all experience levels and practice areas) is $269/hr. Plaintiffs' counsel fit into all three of these relevant categories. Awarding them the average of the three relevant median rates ($283) is more than sufficient considering the type of work performed.

Defendant Bash's analysis of the *Johnson* factors is largely a re-packaged version of his arguments as to why he contends he should have prevailed on the merits. These arguments are non-sequiturs. Defendant Bash does argue that Plaintiff should have broken down the fees incurred in pursuing the claims against him separately from the fees incurred in pursuing relief against Perfect Health. Plaintiff correctly notes in reply that this argument is contrary to the terms of the Equipment Finance Agreement which provides for Plaintiff's entitlement to "all expenses incurred in connection with the enforcement of any of our remedies . . ." ECF No. 75-2 at 3. Dr. Bash signed the Deferral Agreement which re-affirmed his obligation under the Equipment Finance Agreement and the Guaranty, rendering him liable for his own default as well as the default of the principal debtor, Perfect Health (and the costs and attorney fees arising from that default).

Defendant Bash does not specifically challenge the hours expended by Plaintiff's counsel, as set forth in their detailed billing entries. ECF No. 65-3. The Court will not independently audit 38 pages of billing entries. However, reductions are warranted in light of

the relatively uncomplicated nature of the issues and the duplicative nature of the claims considering Plaintiff's entitlement to only a single recovery.

Plaintiff's counsel's bills reflect 479 hours spent on this matter. ECF No. 65-3. That figure is high for an unremarkable $139,000 collection action. The additional claims or causes of action added little to Plaintiff's substantive entitlement to relief. In total, Plaintiff's motion for default judgment requested $1,670,903 in damages (exclusive of costs and fees), which is more than 12 times the $139,000 outstanding balance on the defaulted loan. Plaintiff also participated in unnecessarily multiplying these proceedings by engaging defense counsel in immaterial debates over issues having little to do with the merits of the action.

A 30% reduction in the number of hours expended is warranted, which results in a total of 335 hours, multiplied by the adjusted rate of $283/hr as set forth above, for a total fee of $94,805, plus $1,798.29 in costs. This more than sufficiently compensates counsel for successfully pursuing a $139,000 collection action, particularly given the lack of any meaningful opposition to the merits of the action. Perfect Health defaulted, and Dr. Bash's sole defense was predicated on the alleged forgery of his signature on the finance agreement and guaranty, a defense which was clearly foreclosed by the reaffirmation clause in the deferral agreement (which Dr. Bash admitted he signed).

## IV.

After reviewing the parties' requests to strike materials (ECF Nos. 68, 70, 72) the Court concludes that none of the issues identified warrant the relief requested, nor do they warrant additional discussion. The requests will be denied.

## V.

Plaintiff has not sought a disposition as to Count X (claim and delivery) against Perfect Health. Notably, pursuant to MCR 3.105(E)(3)(H), the judgment must determine:

(a) the party entitled to possession of the property,
(b) the value of the property,
(c) the amount of any unpaid debt, and
(d) any damages to be awarded.

The Court Rule further provides that "the party adjudged entitled to possession of the property described may elect to take judgment for the value of the property instead of possession. The judgment value may not exceed the unpaid debt, if any, secured by such property." MCR 3.105(E)(3)(H)(6).

Before final judgment will be issued, Plaintiff will be directed to seek a disposition of Count X, explain how that requested disposition complies with MCR 3.105(E)(3)(H)(6) (in light of requested judgment on the underlying loan secured by the property), and file a proposed judgment the complies with MCR 3.105(E)(3)(H)(a)-(d). Plaintiff will be directed to do so within 7 days of this order.

### VI.

Accordingly, it is **ORDERED** that Plaintiff's motion for attorney fees, ECF No. 65, is **GRANTED** in part as set forth above. Attorney fees will be entered in favor of Plaintiff and against Defendants in an amount of $94,805, plus $1,798.29 in costs.

It is further **ORDERED** that Plaintiff's motion for default judgment, ECF No. 67, is **GRANTED** in part as set forth above, on Counts II and III against Perfect Health in an amount of $147,920.21 in principal and continuing interest of $22.94 per diem from June 6, 2019 until the judgment is satisfied.

It is further **ORDERED** that Plaintiff's motions to strike, ECF No. 70, 72, are **DENIED**, and Defendant's requests to strike (contained in response brief ECF No. 68) are also **DENIED**.

It is further **ORDERED** that Plaintiff is **DIRECTED** to seek disposition on Count X by **August 2, 2019** of the entry of this order and file proposed a judgment as explained above.

This is not a final order and does not close this case. Judgment will not be entered, and no amounts set forth herein are collectible until Plaintiff has complied with this order.

s/Thomas L. Ludington  
THOMAS L. LUDINGTON  
United States District Judge

Dated: July 26, 2019